UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-cv-22044-KMM

OPTIMA TOBACCO CORP.,
a Florida corporation,

    Plaintiff,

v.

US FLUE-CURED TOBACCO GROWERS,
INC., a North Carolina corporation, UETA,
INC., a Panamanian corporation, and DUTY
FREE AMERICAS, INC., a Florida
corporation,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS UETA AND DUTY FREE AMERICAS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

This cause is before the Court on Defendants UETA, Inc. and Duty Free Americas, Inc.'s Motion to (1) Dismiss for Lack of Subject Matter Jurisdiction; (2) Dismiss for Lack of Personal Jurisdiction; (3) Dismiss for *Forum Non Conveniens* or, in the Alternative, Transfer for Improper Venue; and/or (4) Dismiss for Failure to State a Claim. [D.E. 45]. For the reasons explained below, the motion is granted.

**I.    BACKGROUND**

This is an action for copyright infringement in which Plaintiff Optima Tobacco Corp. ("Optima") alleges that US Flue-Cured Tobacco Growers, Inc. ("USFC"); UETA, Inc; and Duty Free Americas, Inc. ("DFA") infringed on certain copyrights in three "[w]orks, comprised of

artistic and technical elements," titled SHERIFF®, PATROL®, and SMOKING GUN®.[1]  Am. Compl. ¶¶ 8, 10 [D.E. 17].

In September 2012, Optima, UETA, and Defendant US Flue Cured Tobacco Growers, Inc. ("USFC") entered into a Manufacturing Agreement that defined each party's role in the manufacture and sale of UETA's SHERIFF®, PATROL®, and SMOKING GUN®-branded cigarettes (the "Manufacturing Agreement" or "Agreement").  [D.E. 45-1].  Under the Agreement, UETA engaged USFC to manufacture SHERIFF®, PATROL®, and SMOKING GUN®-branded cigarettes and roll-your-own tobacco, *see id*. § 2.1, with Optima serving as a customer service liaison between UETA and USFC, *see id*. § 7.1.  Optima's duties included receiving purchase orders from UETA; preparing purchase orders for USFC; invoicing UETA when products were ready to ship; and monitoring the flow of the products.  *See id*.

The Manufacturing Agreement defines the "Products" as SHERIFF®, SMOKING GUN®, and PATROL®-branded "cigarettes and roll-your-own tobacco products manufactured by [USFC] for [UETA] . . . ."  *See id*. § 1.1.  It defines the "Owner Product Attributes" as "the Products' packaging designs and specifications, branding, labeling, copyrights, trademarks (including without limitation, the Trademark), logos, symbols, and trade dress for use by [USFC] in the manufacture and packaging of the Products . . . ."[2]  *Id*. § 1.8.  The Agreement goes on to state that UETA "owns the Owner Product Attributes and has the right to use and distribute same, and the use thereof will not infringe upon the rights of any other party."  *Id*. § 3.3.  It

---

[1] Optima claims that it created the design specifications for the SHERIFF®, PATROL®, and SMOKING GUN® works as early as 2007.  [D.E. 61-3 ¶ 11].

[2] The term "Trademark" is defined to mean "the 'SHERIFF®', 'SMOKING GUN®', and 'PATROL®' trademarks (and any other names to be added by amendment in the future), together with all related logos, emblems or symbols, and all combinations, forms and derivatives thereof as are from time to time used by [UETA] or any of its affiliates."  *Id*. § 1.9.  UETA's ownership of the SHERIFF®, PATROL®, and SMOKING GUN® trademarks is undisputed.

further states that UETA is and shall remain "the owner of all rights, title and interests, including all intellectual property rights, with respect to the Owner Product Attributes." *Id*. § 11.1.

Importantly, the Manufacturing Agreement also provides that UETA owns and retains the exclusive right to reproduce and copy the copyrights in the event the parties' agreement is terminated. *See id*. § 12.4 ("[USFC] further agrees not to (a) use any reproduction, counterfeit, copy or colorable imitation of any of the Owner Product Attributes . . . or other packaging design aspects . . . likely to dilute [UETA]'s rights in and to the Owner Product Attributes . . . ."). UETA, moreover, which granted USFC only a limited, non-transferable, and revocable license to use the Owner Product Attributes, retained the right to distribute copies, license, and display the Owner Product Attributes publicly. *See id*. § 2.3 ("[UETA] reserves the right to use the Owner Product Attributes in connection with the Products and promotion thereof, and to license same in whole or in part to others."). The Agreement also prohibits USFC from granting sublicenses without UETA's written consent, which was subject to UETA's "sole and absolute discretion." *See id*. Further, UETA had the right to create derivative works of the Owner Product Attributes. *See id*. ("The Owner Product Attributes may be amended from time to time . . . .").

As a whole, the Manufacturing Agreement acknowledges, establishes, and memorializes UETA's ownership of all copyrights in its recitals, definitions, representations and warranties, and substantive provisions. Importantly, too, section 14.11 specifically provides that "[a]ll covenants, agreements, representations, warranties, indemnities and provisions of this Agreement concerning the parties' rights which, by their nature or content, operate after termination or which are necessary to enforce any right, shall survive and continue to be effective after termination of the agreement."

3

The parties operated under the Agreement until early 2015, when it was replaced with a new agreement that omitted Optima. In April 2015, after Optima was left out of the new agreement, it registered copyrights in the SHERIFF®, SMOKING GUN®, and PATROL® works. [D.E. 17-1]. Optima then filed this action for copyright infringement.

## II.    LEGAL STANDARD

UETA moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[3] Attacks on subject matter jurisdiction come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (citations omitted). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 1529. These two forms of attack differ substantially. On a facial attack, "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Id*. But when the attack is factual, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

If a district court determines that it lacks subject matter jurisdiction, it "is powerless to continue" and must dismiss the complaint. *Nalls v. Countrywide Home Servs., LLC*, 279 F. App'x 824, 825 (11th Cir. 2008).

---

[3] "Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)." *Gesten v. Stewart Law Grp., LLC*, 67 F. Supp. 3d 1356, 1357 (S.D. Fla. 2014) (citing *Region 8 Forest Svc. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 807 n.8 (11th Cir.1993)).

**III.    DISCUSSION**

As shown more fully below, because the Manufacturing Agreement establishes that UETA (not Optima) owns the copyrights in the packaging designs of the SHERIFF®, SMOKING GUN®, and PATROL®-branded cigarettes and roll-your-own tobacco products, Optima lacks standing to maintain this action for copyright infringement.  Accordingly, UETA and DFA's motion to dismiss for lack of subject matter jurisdiction is granted.

**A.    Optima Does Not Own The Copyrights At Issue**

According to the plain, clear, and unambiguous terms of the Manufacturing Agreement, UETA (not Optima) owns the copyrights, packaging designs, and all other intellectual property encompassed by the "Owner Product Attributes."  For instance, section 3.3 of the Agreement provides that "[UETA] owns the Owner Product Attributes and has the right to use and distribute same, and the use thereof will not infringe upon the rights of any other party."  [D.E. 45-1].  Similarly, section 11.1 states that "[UETA] is, and [UETA] . . . shall remain, the owner of all rights, title and interests, including all intellectual property rights, with respect to the Owner Product Attributes."  *Id*.  Based on these provisions, and others, Optima expressly agreed that the "Owner Product Attributes" specifically include the "copyrights" to the tobacco packaging.  Id. § 1.8.  Thus, any and all ownership interest in copyrights to the package designs that Optima may have had were transferred to UETA under the Manufacturing Agreement signed by Optima.

Optima attempts to save itself from its repeated and unequivocal declarations throughout the Manufacturing Agreement that UETA owns the copyrights by arguing that the Agreement should be construed as granting UETA only a license to use the copyrights.  As Optima claims,

> The artwork at issue, in some form, was designed years prior to the agreement.  In the 6 years that the Parties have been doing business, it was never contemplated, bargained, or otherwise intended that anyone other than Optima would own the Works.  The Work was created by Optima as early as 2010, and goods were manufactured for years prior to entering into the [2012 Manufacturing

> Agreement]. That agreement was terminated (wrongfully and unilaterally) in 2015 . . . .

[D.E. 61 at 2]. Optima goes on to argue that it did not transfer any rights in the copyrights at issue:

> Defendants rely wholly on the proposition that the executed written agreement is a per se transfer. However, the agreement did not transfer any rights, and there is no evidence to support that a transfer ever occurred. Optima permitted Defendants UETA and Duty Free Americas to represent to [USFC] that it owned the copyrights, and that permission lies in license. There is no other allegation of transfer, the contract is silent on transfer, and there aren't any allegations or assertions that the written agreement embodies or memorializes an oral transfer.

*Id*. at 4–5. Optima claims, in sum, that the Manufacturing Agreement should be construed as granting UETA only a license to use the copyrights, which license ended when the Agreement was terminated.

The Court is unpersuaded. In its opposition, Optima does not dispute and thus concedes that the Manufacturing Agreement is properly before the Court. Optima also admits (1) to the Agreement's authenticity, (2) that it was a party to the Agreement, and (3) that it agreed specifically to the language in the Agreement declaring UETA the owner of the copyrights it now claims to own. These are case-dispositive admissions.

In any event, Optima relies entirely on inadmissible parol evidence to escape the ineluctable reality that the Manufacturing Agreement transferred any and all ownership rights to the copyrights to UETA. "There is probably no better known rule of law than that which says that parol evidence may not be used to contradict the terms of an unambiguous contract." *Orkin Exterminating Co. v. F.T.C.*, 849 F.2d 1354, 1362 (11th Cir. 1988). Attempting to explain away its admissions of UETA's ownership, Optima impermissibly proffers extrinsic evidence. This extrinsic evidence takes the form of the Declaration of Jim Judge [D.E. 61-3], partner and owner of Optima, which maintains, contrary to the express language of the Agreement, that Optima (not

6

UETA) owns the copyrights. Even so, throughout the Agreement, unambiguous language states and makes clear that UETA owns the copyrights, with these acknowledged rights of ownership surviving the Agreement's termination by operation of section 14.11. The plain language of the Agreement undermines Optima's claim of ownership, depriving it of any copyright claim as a matter of law. S*ee Saregama India, Ltd. v. Mosley*, 635 F.3d 1284, 1297 (11th Cir. 2009).

The Court is also unpersuaded by Optima's reliance on its copyright registrations as prima facie evidence of ownership. The Copyright Act of 1976, 17 U.S.C. §§ 101–810, provides that

> [i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c); *see also Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999). In this case, by Optima's own admission, Optima's registration did not occur until well after five years after first publication.[4] As such, the weight accorded to Optima's copyright registrations is within the Court's discretion. In light of the Manufacturing Agreement, where Optima expressly agreed that UETA owns the copyrights at issue, the registrations are afforded no evidentiary weight.

In short, according to the plain, clear, and unambiguous language of the Manufacturing Agreement, UETA (not Optima) owns the copyrights in the packaging designs of the SHERIFF®, SMOKING GUN®, and PATROL®-branded cigarettes and roll-your-own tobacco products.

---

[4] Optima claims to have created the SHERIFF®, PATROL®, and SMOKING GUN® works as early as 2007. [D.E. 61-3 ¶ 11]. Then, in April 2015, following the termination of the Manufacturing Agreement, Optima registered copyrights in those works.

>    B.    **Optima's Lack Of Ownership Precludes Standing To Assert A Copyright Infringement Claim, And So This Action Must Be Dismissed For Lack Of Subject Matter Jurisdiction**

Because the Manufacturing Agreement establishes that UETA (not Optima) owns the copyrights, Optima lacks standing to bring an action for infringement of those copyrights. Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right while he or she is the owner of it." 17 U.S.C. § 501(b); *see also Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1369 (S.D. Fla. 2015). The copyright owner must have such status at the time of the alleged infringement to have standing to sue. *World Thrust Films Inc. v. Int'l Family Entm't Inc.*, No. 93–0681–CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996); *see also Lorentz v. Sunshine Health Prods., Inc.*, No. 09–61529–CIV, 2010 WL 3733986, at *8 (S.D. Fla. Aug. 27, 2010) ("If Plaintiff did not have the right to sue for accrued infringements at the time she filed this action, she lacks standing to maintain this action.") (citing *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir. 1969)). As explained in detail above, at the time Optima instituted this action, it did not own the copyrights at issue. Optima expressly and unambiguously transferred any and all ownership rights to the copyrights to UETA under the Manufacturing Agreement. Thus, Optima lacks standing to bring this copyright infringement action.

Optima's lack of standing requires the Court to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction. *See, e.g.*, *Saregama India, Ltd.*, 635 F.3d at 1297 ("We therefore hold that, under the Agreement, Saregama does not presently own a copyright in the BMBH sound recording and consequently lacks statutory standing to bring this copyright infringement claim."); *Turi v. Stacey*, No. 13-248–OC–22PRL-CIV-CONWAY, 2015 WL 403228, at *6 (M.D. Fla. Jan. 28, 2015) (dismissing complaint and claim for copyright infringement for lack of standing because the parties' contract provided defendant with exclusive

use of copyright and "[p]laintiff has conflated a claim of copyright infringement with a claim of breach of contract").

## IV.     CONCLUSION

For the foregoing reasons, it is ordered and adjudged that Defendants UETA, Inc. and Duty Free Americas, Inc.'s Motion to Dismiss [D.E. 45] is granted.  This case is hereby dismissed for lack of subject matter jurisdiction.

The Clerk of Court is instructed to close this case.  All pending motions are denied as moot.

Done and ordered in Chambers at Miami, Florida, this  16th  day of March, 2016.

                                              K. MICHAEL MOORE
                                              CHIEF UNITED STATES DISTRICT JUDGE

c:     Counsel of record